# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ETCHEGARAY FARMS, LLC, a California limited liability company,** | CASE NO. 1:17-CV-1449 AWI JLT |
| Plaintiff | ORDER ON ETCHEGARAY FARMS' MOTION TO DISMISS |
| v. | |
| **LEHR BROTHERS, INC., a California corporation d/b/a Big L Packers, et al.,** | (Doc. No. 17) |
| Defendant | |
| AND RELATED CLAIMS | |

This is a Perishable Agricultural Commodities Act ("PACA") (7 U.S.C. § 499a et seq.) case based on the sale and distribution of organic lemons. This action was consolidated and merged with *Lehr Bros., Inc. v. Etchegaray Farms, LLC*, 1:17-CV-1762 AWI JLT, a case that was removed from the Kern County Superior Court. Currently before the Court is Etchegaray Farms' ("Etchegaray") motion to dismiss Lehr Brothers ("Lehr") and California Potato Sales' ("CPS") first and second causes of action for the common counts of open book account and money lent. Etchegaray moves to dismiss under Rule 12(b)(6), but alternatively moves for summary judgment under Rule 56. See Doc. No. 5. For the reasons that follow, the motion to dismiss will be granted in part and denied in part, the motion for summary judgment will be granted in part, but amendment will be permitted.

**FACTUAL BACKGROUND**

*Factual Background*

From Lehr/CPS's Complaint ("Complaint"), Etchegaray grows organic lemons. In 2011, Lehr contracted with Etchegaray for the packing and marketing of Etchegaray's lemons. CPS was given the right to sell lemons on behalf of Etchegaray. As part of these agreements, CPS periodically advanced money to Etchegaray to aid in the lemon harvesting process. These sums were intended and agreed to be repaid to CPS by deductions from any future proceeds generated by the sale of Etchegaray's organic lemons.

Within a year of October 2017, CPS discovered that beginning in 2013, the sums advanced by CPS to Etchegaray exceeded the proceeds generated by the organic lemon sales by the following amounts: 2013 - $6,456.74; 2014 - $409,403.79; 2015 - $381,534.58; 2016 - $18,064.66. Lehr and CPS discovered that their accountings and pack-out reports (some of which were provided to Etchegaray) erroneously reflected a higher percentage of fruit being packed per bin, greater numbers of bins being sold, and lower hauling costs incurred. These errors obscured the significant disparities between the actual and reported information, and served to create a misperception that the crop advances provided by CPS had been repaid by Etchegaray. Lehr and CPS's accountings and pack-out reports were so inconsistent with the actual numbers of fruit packed per bin, the numbers of bins sold, and the hauling costs, that the error should have been obvious to any person in the lemon/agriculture industry, including an experienced grower like Etchegaray. When Lehr and CPS discovered the erroneous accounts, they notified Etchegaray.

Also, beginning in January 2017, an employee or agent of Lehr and CPS purported to agree to purchase organic lemons from Etchegaray with payment terms that were remarkably different from the customs and prevailing practices in the industry and from the prior course of dealing between the parties, including terms related to hauling costs, bin guarantees, and "ups" (sale proceeds generated from the sale of lemons).

Lehr and CPS now bring claims against Etchegaray for open book account, money lent, rescission, reformation, and declaratory relief. Under the first cause of action for open book, Lehr and CPS, after incorporating all prior paragraphs by reference, allege that, within the last four

2

years, Etchegaray has become indebted to CPS on an open book account for money due in the sum of $726,456.22, but after CPS demanded payment, Etchegaray refused to pay. Under the second cause of action for money leant, after incorporating all prior paragraphs by reference, Lehr and CPS allege that Etchegaray has become indebted to them within the last four in the sum of $726,456.22, but after CPS demanded payment, Etchegaray refused to pay.

**I.    MOTION TO DISMISS**

*Legal Framework*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMeidca, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility."

Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

*Etchegaray's Argument*

With respect to an open book account, Etchegaray contends that there was no valid open account. After each growing season, Etchegaray received a final accounting. Thus, the practice described by Lehr and CPS does not fit the definition of an "open book account," rather what is described is a closed account.

In reply, Etchegaray argues *inter alia* that the Complaint is inconsistent in that it alleges an open book account balance due of over $700,000.00, but then also alleges that only within the last year did Lehr and CPS determine that Etchegaray owed money. If Lehr and CPS only recently determined that a balance was owed, then this is inconsistent with an open book account because the account would have shown a balance immediately and for a number of years.

With respect to money lent, Etchegaray argues that the facts and dates alleged in the Complaint show that the claims for money lent in 2013, 2014, and 2015 are barred by the two year limitation period of California Code of Civil Procedure 339(1).

4

*Lehr & CPS's Opposition*

Lehr & CPS argue that they have pled a plausible book account claim. There does not appear to be a dispute that there was a book account agreement between the parties. The dispute is whether the account is open or closed, but the only distinction between an open book account and a closed book account is the running of the statute of limitations. The four year limitations period does not begin until the account is closed. The limitations issue is irrelevant here because the complaint only seeks sums that fall within four years of filing. If necessary, Lehr/CPS request leave to amend to allege a closed account.

With respect to money lent, Lehr/CPS argues that the claim is subject to a four year statute of limitation.

*Legal Standard*

Under California law, "common counts" are general pleadings that seek to recover money owed without necessarily specifying the nature of the claim. See Title Ins. Co. v. State Bd. of Equalization, 4 Cal.4th 715, 731 (1992); Interstate Grp. Adm'rs v. Cravens, 174 Cal.App.3d 700, 706 & n.2 (1985). "A common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished." Kawasho Int'l, U.S.A. v. Lakewood Pipe Serv., 152 Cal.App.3d 785, 793 (1983). An "open book account" and "money lent" are common counts. Earl's Mail Serv. v. Toone, 2008 Cal.App. Unpub. LEXIS 6427 *13-*14 (2008).

### 1. Open Book Account

A "book account" is defined by statute as:

> a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner.

Cal. Code Civ. Pro. § 337a. This section creates a "three-part statutory test" for a book account:

(1) the existence of "the principal record of one or more transactions" between the plaintiff/creditor and defendant/debtor; (2) entries in the record that were made in the plaintiff/creditor's regular course of business; and (3) the record was kept in a reasonably permanent form and manner. <u>Tsemetzin v. Coast Fed. Say. & Loan Ass'n</u>, 57 Cal.App.4th 1334, 1343 (1997). However, the "mere incidental keeping of accounts does not alone create a book account." <u>Maggio, Inc. v. Neal</u>, 196 Cal.App.3d 745, 752 (1987); <u>H. Russell Taylor's Fire Prevention Service, Inc. v. Coca Cola Bottling Corp.</u>, 99 Cal.App.3d 711, 728 (1979). "A book account is created by the agreement or conduct of the parties in a commercial transaction." <u>H. Russell Taylor</u>, 99 Cal.App.3d at 728; <u>see Maggio</u>, 196 Cal.App.3d at 752. "Parties to a written or oral contract may . . . provide that monies due under such contract be the subject of an account between them." <u>H. Russell Taylor</u>, 99 Cal.App.3d at 728; <u>see also</u> <u>Windecker, Inc. v. Menefee</u>, 2011 Cal.App. Unpub. LEXIS 9656, *11 (Dec. 19, 2011). However, "moneys due under an express contract cannot be recovered in an action on an 'open book account' in the absence of a contrary agreement between the parties." <u>H&C Global Supplies Sa De Cv v. Pandol Asscs. Marketing, Inc.</u>, 2013 U.S. Dist. LEXIS 159185, *6-*7 (E.D. Cal. Nov. 6, 2013); <u>Dreyer's Grand Ice Cream, Inc. v. Ice Cream Distributors of Evansville, LLC</u>, 2010 U.S. Dist. LEXIS 47738, *11 n.5 (N.D. Cal. May 14, 2010); <u>Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.</u>, 116 Cal.App.4th 1375, 1396 n.9 (2004); <u>Tsemetzin</u>, 57 Cal. App. 4th at 1343-44 (and cases cited therein). "An express contract is one the terms of which are stated in words, but such a contract need not be in writing." <u>Treadwell v. Nickel</u>, 194 Cal. 243, 261 (1924); <u>see also</u> <u>Johnny A. Ribeiro v. Larocca</u>, 2009 Cal.App. Unpub. 4460, *19-*20 (June 5, 2009) (noting that an oral contract is an express contract). "[C]ourts require that the parties expressly intend to be bound because accruing debts under an express contract are not normally considered the subject of an open book account." <u>In re Roberts Farms, Inc.</u>, 980 F.2d 1248, 1252 n.3 (9th Cir. 1992). Whether a book account exists between parties is generally a question of fact. <u>Cochran v. Rubens</u>, 42 Cal.App.4th 481, 485 (1996).

        2. <u>Money Lent</u>

"Where one person lends money to another, the law implies an obligation to repay it. An

action in the form of a common count for money lent is recognized as an appropriate pleading to recover money so advanced." 55 Cal. Jur. 3d Restitution § 25. That is, the "common law . . . knew a [common] count for "money lent" which was the appropriate form in which to state a cause of action for money loaned." Jones v. Re-Mine Oil Co., 47 Cal. App. 2d 832, 843 (1941). "To state a common count for money lent, the plaintiff need only allege that the defendant is indebted in a certain sum for money loaned by the plaintiff and that the defendant has not repaid the money." Lintz v. Blue Goose Dev., LLC, 2015 Cal. App. Unpub. LEXIS 2901, *35 (Apr. 24, 2015) (citing Pleasant v. Samuels, 114 Cal. 34, 36-38 (1896)).

*Discussion*

1. Open Book Account[1]

The Complaint alleges that there is an open book account, that about $ 726,000 of debt remains unpaid by Etchegaray, the debt arose over the course of the last four years when CPS advanced money to Etchegaray with respect to lemon crops, and that the actual amount of debt was only recently discovered. These allegations sufficiently identify the cause of action and the amount owed. The allegation regarding how the debt arose is also sufficient for the Court to infer that the debt and the records surrounding that debt were made within the regular course of business – Lehr and CPS marketed and sold the lemon crops and advanced money with respect to those crops. However, there are insufficient allegations for the Court to infer that the book account was kept in a reasonably permanent form. The Complaint does not describe how the amounts were reflected or provided to Etchegaray, and it does not describe the existence of an actual book or some other reasonably permanent form of account. Without allegations that address or describe the permanent nature of the "book"/account, there is no plausible claim alleged. See Iqbal, 556 U.S. at 678; Levitt, 765 F.3d at 1135; Tsemetzin, 57 Cal.App.4th at 1343,

Additionally, as stated above, the general rule is that a debt associated with an express contract will not be the subject of a book account, the exception is when the parties agree that the debt will in fact be subject to a book account. See In re Roberts Farms, 980 F.2d at 1252 n.3;

---

[1] Most of Etchegaray's arguments against the first cause of action are more properly the subject of the Rule 56 motion. Therefore, the Court will review the adequacy of Lehr/CPS's allegations under a general Rule 12(b)(6) analysis and address Etchegaray's arguments that are applicable to a Rule 12(b)(6) motion.

H&C Global, 2013 U.S. Dist. LEXIS 159185 at *6-*7; Dreyer's, 2010 U.S. Dist. LEXIS 47738 at *11 n.5; Armstrong Petroleum, 116 Cal.App.4th at 1396 n.9; Tsemetzin, 57 Cal. App. 4th at 1343-44. The allegations in the Complaint show that the debt at issue arose from an express agreement between Etchegaray and Lehr/CPS. Thus, the Complaint's allegations have triggered the general rule. The application of the general rule defeats the alleged book account. See id. In order to state a plausible claim, the Complaint must allege that, despite the existence of an express agreement for the advancement of money and marketing and sale of crops, the parties agreed that the money advanced to Etchegaray for its crop and the sale proceeds of the crop would be the subject of a book account. See id. Because there are no allegations that rescue the claim from the general rule, no plausible claim is alleged. See id.

Additionally, Etchegaray argues that there are fatally inconsistent allegations in that the Complaint alleges that a book account was in existence, but only within the last year were errors identified. Etchegaray argues that this is inconsistent with a true book account and violates California rules of pleading, which prohibit inconsistent allegations. The Court is not convinced.

First, the California rules of pleading do not apply in this case. No matter the basis of jurisdiction, the Federal Rules of Civil Procedure govern the adequacy of a pleading in federal court. See Hefferman v. Bass, 467 F.3d 596, 599 (7th Cir. 2006); Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003); Simpson v. James, 903 F.2d 372, 375 (5th Cir. 1990); Neveau v. City of Fresno, 392 F.Supp.2d 1159, 1184 (E.D. Cal. 2005); Davidson v. Yihai Cao, 211 F.Supp.2d 264, 276 (D. Mass. 2002).

Second, an inconsistency is not apparent. The Court understands Etchegaray to be arguing that, given the fact that no debt to Lehr/CPS was ever reflected in the relevant accountings, and the fact that the debt was not disclosed to Etchegaray until sometime in 2017, there is not a book account. However, the fact that the debt was not discovered or ultimately entered into a book account until recently is not necessarily fatal. "Although normally entries in an account book must be made at or near the time of the transactions to which they relate and there should be no long delay without satisfactory explanation, an irregularity in that respect is not necessarily fatal to an action on a book account." Warda v. Schmidt, 146 Cal. App. 2d 234, 238 (1956) (citation

omitted).  In order to recover, Lehr/CPS will have to convince a finder of fact that the accounting errors were reasonable in order to recover the $726,000.00.  For now, it is enough that they have identified a reason that explains the recent entries and disclosure of the alleged debt.[2]

In sum, because the Complaint fails to allege a reasonably permanent book/record and fails to allege an agreement to create a book account with respect to the marketing and packing agreement, dismissal of the first cause of action for an open book account is appropriate.

    2.    Money Lent

As noted above, the complaint alleges that:  CPS advanced money to Etchegaray, see Complaint ¶ 7, the monies advanced would be repaid through the sales of Etchegaray's lemons, see id., but because of an on-going accounting error, the monies advanced were not actually repaid, see id. at ¶¶ 8, 12, 17, Etchegaray owes $726,456.22 (which covers a four year period), see id. at ¶ 17, and despite a demand for repayment, Etchegaray has not repaid the advanced monies.  See id. at ¶ 18.  In other words, the complaint alleges that CPS loaned money to Etchegaray, but Etchegaray has not repaid the specified amount owed.  This is sufficient to state a plausible common count for money lent.  See Lintz, 2015 Cal.App.Unpub. LEXIS 2901 at *35.  The applicable statute of limitation depends on whether the loan agreement was written or oral, see Cal. Code Civ. P. § 337(1) (four year period for written agreement), § 339(1) (two year period for oral agreement), but the Complaint does not specify the nature of the agreement.  Thus, there is no statute of limitations problem on the face of the Complaint.  See id.

Dismissal of the second cause of action for money lent is inappropriate.

## II. **Motion For Summary Judgment**

*Legal Framework*

Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The

---

[2] Of course, Etchegaray will be able to challenge the accuracy and validity of each entry made in a book account, including the recent "corrected entries" that show the debt.  See Interstate Grp., 174 Cal.App.3d at 708.

party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008). The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must still be rational or reasonable. See Narayan, 616 F.3d at 899.

*Etchegaray's Arguments*

Etchegaray argues that the money transactions were not book accounts because there was no intention that there would be continuing obligations on any account, rather the accounts were settled and closed after each growing season, and then separately renegotiated for new seasons. At the end of the season, Lehr/CPS provided a final accounting, which included units sold, average price, total sales, and deductions for picking, packing, and hauling. Each final account stated the net settled amount that would be remitted to Etchegaray, and was prepared by Lehr and CPS. The parties intend that the account would not be carried into the next year or have a continuing obligation into the next growing season. It was not until August 31, 2017, that Lehr/CPS provided Etchegaray with adjusted accounting for the 2013, 2014, 2015, and 2016 growing season.

With respect to money lent, Etchegaray argues that there are no written agreements prior to the 2016/2017 growing season. Therefore, oral agreements governed the 2013, 2014, and 2015 seasons, and the final accounting and final check for 2015 was received more than two years before Lehr/CPS filed their complaint. Under California Code of Civil Procedure § 339(1), claims for money lent based on the 2013, 2014, and 2015 growing seasons are time barred.

*Lehr & CPS's Opposition*

Lehr/CPS's arguments are generally the same as those made in opposition to the motion to dismiss. There appears to be agreement that a book account existed, and whether the account is closed or open does not matter because a four year limitations period would govern and the Complaint only seeks to recover for claims that fit within four years of filing. Additionally, Lehr/CPS argue that there were numerous written agreements between the parties, but Etchegaray has not submitted any contract for analysis. The declaration of Steve Etchegaray does not state that he expressed any intent that accounts would be closed at the end of the year and not carried forward. Such unexpressed intent is irrelevant to interpreting written contracts.

With respect to money lent, Lehr/CPS argue that Etchegaray has not met its burden of demonstrating that a written agreement does not address the advanced monies.

*Relevant Declarations*

In pertinent part, Lehr/CPS officer Leslie Lehr declares:

> As a general practice, growing seasons and related accountings for such may overlap, therefore creating the need for an estimate towards anticipated future returns for that season. This can happen up until all the product is processed and paid for by outside customers. Outside customers receive product and remit funds upon acceptance by the final customer and take whatever necessary discounts, quality adjustments, and price adjustments warranted at that time. Any overage or shortfall of monies as applied to the prior estimates is normally adjusted within the next growing season. As growing seasons are completed and audits are performed, balances to the appropriate party would be satisfied. [CPS] and [Lehr] have never waived their rights to recover amounts that were reimbursed by the end of the season.
>
> Between 2011 and 2017, the relationship between the parties was ongoing, with [CPS] continuing to provide crop advances to Etchegaray Farms for its growing operations, with reimbursement adjustments being made to the Etchegaray Farm ledger as crop harvest and sales came to fruition. [CPS and Lehr] did not consider the seasons "distinct" for purposes of determining whether additional advances would be made or whether there were outstanding amounts due by Etchegaray Farms to [CPS or Lehr].

11

It is true that various accountings were performed. But it was never the express or implied agreement of the parties that any mistake or oversight in the number of bins, packout percentage, or hauling charges would result in a waiver or release by [CPS or Lehr] for the recovery of the full amounts it advanced to Etchegaray Farms for growing operations.

There were miscalculations made as to accountings provided to Etchegaray Farms in 2013, 2014, 2015, and 2016. Those discrepancies included exceptionally high packout percentages, exceptionally large number of bins sold, and considerably low hauling costs. The amounts reflected in the accountings were significantly outside industry norms and standards at the time. A grower of Etchegaray Farms' experience should have immediately recognized these obvious oversights.

Lehr Dec. ¶¶ 4-7.

In pertinent part, Steven Etchegaray, an officer of Etchegaray, declared:

Since 2010, Etchegaray has contracted with CPS and Lehr to use the services of CPS and Lehr to pack and to market Etchegaray's organic lemon crops.

I have not negotiated or executed a formal written marketing agreement on behalf of Etchegaray with Plaintiffs relating to the marketing of Etchegaray's lemons for the seasons prior to the 2016 to 2017 season.

Lehr and CPS agreed in writing to sell Etchegaray's lemons for guaranteed minimum payments of $600 or $700 per bin, depending on the time frames involved, for the 2016 and 2017 season.

At the end of each season, Lehr and CPS prepared and provided Etchegaray with a final accounting. Although lacking in detail, the final accounts of sale for each season provided details of units sold, average price, total sales, and deductions for Plaintiffs' picking, packing, and hauling charges. Each final account of sale stated the net settled amount that would be remitted to Etchegaray. Each final account of sales was prepared by Lehr and CPS.

At the beginning of each season, I would restart discussions with Scott Pursel, Lehr and CPS's executive, to negotiate new terms for the upcoming marketing season. Each season was handled separately. Each season began with a clean slate with no obligations that carried into the upcoming season from the previous season.

On or about March 25, 2013, Plaintiffs prepared and provided the final account of sale for the 2013 season, showing a balance due to Etchegaray of $31,061.68. . . .

On or about April 22, 2014, Plaintiffs prepared and provided the final account of sale for the 2014 season, showing a balance due to Etchegaray of $763,348.17.

On or about May 19, 2015, Plaintiffs prepared and provided the final account of sale for the 2015 season, showing a balance due to Etchegaray of $380,484.08.

Generally, the sales returns due to Etchegaray, were paid to Etchegaray by

12

> Lehr and CPS and usually within 30 to 45 days of Etchegaray's receipt of the final accounts of sale. For example, the final amount for the 2015 season was paid by Plaintiffs to Etchegaray on June 22, 2015 in the amount of $180,484.08 by check.
>
> The parties intended at the end of each season, the account would be closed and settled and not carried into the next year. In other words, Plaintiffs would account back to Etchegaray at the end of each season. Based on the accountings prepared by Plaintiffs, Plaintiffs would remit sales returns to Etchegaray at the end of that season. The parties did not intend that Plaintiffs could carry over or have a continuing obligation to pay Etchegaray into the next season.

Steve Etchegaray Dec. ¶¶ 5-14.

*Discussion*

1. Book Account

The evidence submitted by Etchegaray indicates that each growing season was distinct, and that arrangements and terms were bargained anew after the conclusion of each crop/growing season. This is supported not only by the declaration of Steve Etchegaray, but also by the exhibits attached to his declaration. Etchegaray has submitted two documents from CPS and one document from Lehr that are single page accountings relating to the 2013, 2014, and 2015 lemon crops. See Steve Etchegaray Decl. Exs. 1, 2, 3. The number of cartons, actual units, average price, total sales, packing charges, and picking and hauling charges are all identified. See id. With the exception of a $5 per "unit" charge that appears in both 2013 and 2014, all of the other numbers appear to be different from year to year. See id. Steve Etchegaray declares that these documents represent the final accounting to Etchegaray, and each shows that Etchegaray was owed a balance, and that the balance was paid by Lehr/CPS within 30 to 45 days of Etchegaray receiving the single page accounting. The exhibits do not reflect a balance forward, do not reflect a single account number, and do not indicate that further documents (other than a check) would be provided to Etchegaray.

Viewed in the light most favorable to Lehr/CPS, the opposition declaration of Leslie Lehr is not to the contrary. As quoted above, Leslie Lehr declared that, "as a standard practice," growing seasons and related accountings may overlap. See Leslie Lehr Dec. ¶ 4. However, she does not say that this actually occurred with respect to Etchegaray, and the documents submitted by Etchegaray do not indicate that any overlap occurred. Evidence of a standard practice that is dependent upon what may or may not happen does not undermine evidence concerning what

13

actually happened. Etchegaray's evidence indicates that there was no overlap, and that no balances owed to Lehr/CPS were carried forward or intended to be carried forward into a new year. Lehr does not deny that no further adjustments (except for the alleged accounting errors that were discovered in 2017) were ever made or that final checks for the crops followed within 30 to 45 days of the single-page accounting documents in 2013, 2014, and 2015.

As quoted above, Leslie Lehr also declares that there was an on-going relationship between the parties from 2011 to 2017. See id. at ¶ 5. However, she does not deny that new negotiations occurred with Etchegaray for each new season/crop, nor does she declare that the amounts to be advanced were to be continuously accounted for in one account as a series of related transactions.

As quoted above, Leslie Lehr also declares that CPS did not consider the growing seasons distinct for purposes of determining whether to extend credit or for determining whether there were outstanding monies due from Etchegaray. See id. However, these assertions miss the relevant issue. The issue is not whether or how CPS decided to advance money or determined whether Etchegaray owed money, the issue is how the actual advancement was treated or viewed by the parties and whether that agreed treatment was sufficient for purposes of a book account.

As quoted above, Leslie Lehr also declares that it was never agreed that any "accounting mistakes" would result in waivers by CPS for the full amount advanced to Etchegaray. Again, this is not a relevant issue. Etchegaray has not argued that CPS waived any amounts that were advanced, rather Etchegaray is arguing that no book account was ever formed for a period between 2011 through 2017. Waiver has nothing to do with the elements of a book account. See Cal. Code Civ. P. § 337a; Tsemetzin, 57 Cal.App.4th at 1343.

Finally, as quoted above, Leslie Lehr declares that miscalculations and certain numbers deviated so far from industry norms that Etchegaray had to recognize immediately that there were errors. Again, whether Etchegaray recognized any errors or miscalculations is irrelevant to the issue of whether there is a book account between the parties. The accuracy of any entries in a book account is an issue that goes to the amount of money actually owed (if any), see Interstate Grp., 174 Cal.App.3d at 708, it does not go the issue of whether a book account exists. Cf. Tsemetzin, 57 Cal.App.4th at 1343 (setting forth the statutory test for a book account).

Therefore, the evidence presented establishes that there is not a book account between the parties that spans 2011 to 2017. The evidence shows that each yearly growing season was separately negotiated, a final accounting was prepared for each growing season, a balance owed to Lehr/CPS was never presented as part of the final accounting, no balances forward were ever entered on the final accounting provided to Etchegaray, and money advanced for each growing season was a part of a separate and distinct agreement. Once the growing season ended, so did the agreement concerning that season. Therefore, there was no intent to maintain a single on-going book account that carried forward and spanned multiple years.[3] Because the claim alleged in the Complaint is for a single book account that spans from 2013 to 2017, summary judgment on this claim is appropriate.[4]

2.  Money Lent

The parties do not dispute that the statute of limitations for a claim of money lent based on an oral agreement is two years (pursuant to Civil Code of Civil Procedure § 339(1)), but the limitations period for a claim of money lent based on a written agreement is four years (pursuant Civil Code of Civil Procedure § 337(1)). The dispute is over which limitations period applies,

---

[3] Lehr/CPS states that Etchegaray "admits that it had numerous written contracts with [Lehr/CPS] for the sales of its lemons." Doc. No. 11 at 7:18-19. Tellingly, no citation is provided in support of this assertion. The Court is unaware of Etchegaray admitting to "numerous written contracts," rather the Court is only aware of Etchegaray's admission that there was a written contract for the 2016 to 2017 growing season. Counsel's unsupported assertion is not competent evidence. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 951-52 (9th Cir. 1978). Furthermore, in the absence of a written contract, there is no written language for the Court to examine in order to determine the intent of the parties. The only evidence before the Court regarding the parties' intent is the declaration of Steve Etchegaray, and that declaration indicates new and distinct accounts that were negotiated for each season and that closed at the end of each season, without obligations carried forward. See Steve Etchegaray Dec. ¶¶ 4-9, 14. Leslie Lehr's declaration discusses standard practices based on what may occur in a particular season or circumstance, it does not specifically address Etchegaray's crops or agreements or the relevant negotiations with Etchegaray. See Leslie Lehr Dec. ¶ 4. Her declaration is too general to adequately dispute Steve Etchegaray's declaration.

[4] Lehr/CPS argue that summary judgment should be denied because of the early stage of this case and the absence of any discovery. This is a request for relief under Rule 56(d), which provides a mechanism for litigants to avoid summary judgment when they have not had sufficient time to develop evidence. See United States v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002). To obtain relief under Rule 56(d), a party must show: (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion. Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc., 874 F.3d 604, 619-20 (9th Cir. 2017). Lehr/CPS's counsel declares that no discovery has occurred, but that discovery would explore Etchegaray's knowledge of the erroneous accounting errors, and that the information discovered would defeat summary judgment on the book account claim. See Estrada Dec. PP 5, 6, 7. No other evidence or type of evidence is identified. See id. However, as discussed above, while Etchegaray's knowledge of the accounting errors may be relevant to the issue of the amount of money owed, it is not relevant to the existence of a book account. Because the only evidence identified is irrelevant to the summary judgment motion, relief under Rule 56(d) is not warranted.

1 Etchegaray contends the two year period applies and Lehr/CPS contend that the four year period
2 applies. Lehr/CPS argue that summary judgment is improper because Etchegaray has not met its
3 burden of demonstrating that no written agreements govern the advancement of money for the
4 lemon crops. The Court cannot agree with Lehr/CPS.

Steve Etchegaray declared: "As an Authorized Representative of Etchegaray my responsibilities include negotiating and contracting on behalf of Etchegaray. This includes negotiating terms with marketing agents, such as Lehr and CPS." Id. at ¶ 4. As quoted above, Steve Etchegaray also declared that he has contracted with CPS and Lehr since 2010, and he never negotiated or executed a formal written marketing agreement on behalf of Etchegaray with Lehr/CPS relating to the marketing of lemons prior to the 2016 to 2017 season. See id. at ¶¶ 5-6. These paragraphs clearly show that Steve Etchegaray has negotiated with Lehr/CPS on behalf of Etchegaray relating to Etchegaray's lemon crops since 2010, and that no written agreements were signed before the 2016/2017 season. That is, Steve Etchegaray's declaration demonstrates that the agreements between Etchegaray and Lehr/CPS between 2010 and 2015 were all oral agreements. This evidence is sufficient to shift the burden to Lehr/CPS to show that there is a genuine dispute about whether written agreements exist. See Nissan Fire, 210 F.3d at 1103.

Lehr/CPS have not submitted any evidence that indicates a written agreement exists. As quoted above, Lehr/CPS did submit the declaration of Leslie Lehr in opposition to summary judgment. Leslie Lehr's declaration shows that she personally signed many of the advanced money checks on behalf of CPS. See Lehr Dec. ¶ 3. At a minimum, it would have been very easy for Leslie Lehr or any other Lehr/CPS officer or employee to declare that written agreements with Etchegaray exist relating to the advancement of money for Etchegaray's lemon crop (and produce such agreements). The fact that no such declaration or any relevant evidence was submitted in response to Etchegaray's arguments (and in particular Steve Etchegaray's declaration) is extremely telling. The only reasonable conclusion is that Lehr/CPS cannot meet their burden because, as Etchegaray argues, no written agreements exist prior to the 2016/ 2017 growing season.

Based on the evidence submitted, claims related to money lent in 2016 and 2017 are subject to the § 337(1) four year limitations period. All claims related to money lent prior to 2016 are subject to the § 339(1) two year limitations period. More specifically, because Lehr/CPS filed their Complaint in the Kern County Superior Court on October 16, 2017, any claims for money lent that accrued prior to October 16, 2015, are time barred. Steve Etchegaray declared that a final accounting and final check were received from Lehr/CPS for the 2013 season in 2013, for the 2014 season in 2014, and for the 2015 season in May 2015 and June 22, 2015 (the accounting was received in May and a check for $180,484.08 was received in June). See Steve Etchegaray Dec. ¶¶ 10-13. Etchegaray argues that any claim for money lent in 2015 accrued at the latest June 22, 2015, well before October 16, 2015. Lehr/CPS does not challenge this assertion. Therefore, summary judgment with respect to claims for money lent that accrued prior to October 16, 2015, which includes the sums identified for 2013, 2014, and 2015, is appropriate.[5]

### III. **Further Proceedings**

The Court has found that summary judgment on the book account claim as pled is appropriate. However, the briefing and evidence submitted does not rule out all claims concerning book accounts.

With respect to the briefing, Lehr/CPS argue that it does not matter if there is an open book account or, if Etchegaray is correct that there are a series of separate closed accounts, because the statute of limitations on a book account is four years from the date of the last entry. Lehr/CPS are only seeking damages from 2013 forward, i.e. damages that fall within a four year limitation period.[6] This position not only accepts a single book account, but also accepts four separate accounts.

---

[5] The Court notes that, while Lehr/CPS requested relief under Rule 56(d) with respect to the book account claim, Lehr/CPS made no such request with respect to the money lent claim.

[6] The Court agrees with Lehr/CPS's statute of limitations analysis. The statute of limitations on a book account is four years, and the four years runs from the date of the last entry in the account. See Cal. Code Civ. P. 337(2); Professional Collection Consultants v. Lauron, 8 Cal.App.5th 958, 966-67 (2017); R.N.C., Inc. v. Tsegeletos, 231 Cal.App.3d 967, 971-72 (1991). Based on the evidence submitted, the statute of limitations began to run for each book account when that account closed, and each account closed when Lehr/CPS sent Etchegaray a final check. See R.N.C., 231 Cal.App.3d at 971-72; Etchegaray Dec. ¶¶ 9-14.

With respect to the evidence, the declarations of Leslie Lehr and Steve Etchegaray (which are consistent with relevant allegations in the Complaint) indicate that money was advanced by CPS to Etchegaray, and the advanced money was to be repaid through the sales of Etchegaray's lemon crop by Lehr/CPS. The declarations and the exhibits to Steve Etchegaray's declaration indicate that Lehr/CPS maintained records regarding the money advanced and the lemon crop, and then made a final yearly payment to Etchegaray for each crop. That is, the evidence could be consistent with four separate accounts.

The Court finds that the evidence and arguments suggest that there may be four separate books accounts for the 2013, 2014, 2015, and 2016 growing seasons. The Court is aware of no law that requires a book account to reflect every transaction between parties. In fact, by statute, a book account may memorialize either a single transaction *or* a series of transactions between the parties. See Cal. Code. Civ. P. § 337a (a book account is "a detailed statement which constitutes the principal record of *one or more transactions* between a debtor and a creditor arising out of a contract . . . .") (emphasis added). At this early stage in the case, it is not clear that Lehr/CPS cannot viably pursue four separate closed book account claims.[7] Therefore, the Court will permit Lehr/CPS to file an amended complaint that alleges four separate closed book accounts, if they can do so consistent with Federal Rule of Civil Procedure 11. The pleading deficiencies identified under the Court's Rule 12(b)(6) analysis must be addressed for any new book account claims. No other amendments will be permitted.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Etchegaray's Rule 12(b)(6) motion to dismiss is GRANTED with respect to the first cause of action for open book account, but DENIED with respect to the second cause of action for money lent;

---

[7] Merely keeping records does not create a "book account." Maggi, 196 Cal.App.3d at 752. It may be that the evidence ultimately shows that Lehr/CPS merely kept records and that the parties did not agree to create a "book account." However, the evidence is not sufficient at this time for the Court to conclude as a matter of law that no possible book accounts exist.

2. Etchegaray's alternative Rule 56 motion is GRANTED with respect to the first cause of action for open book account and with respect to the second cause of action for money lent in 2013, 2014, and 2015;

3. Within fourteen (14) days of service of this order, and consistent with Rule 11, Lebr and CPS may file an amended complaint which contains a first cause of action for closed book account that is based on four separate and distinct book accounts for the 2013, 2014, 2015, and 2016 growing seasons/organic lemon crops;[8]

4. If Lehr and CPS file a timely amended complaint, Etchegaray may file an appropriate response within fourteen (14) days of service of the amended complaint; and

5. If Lehr and CPS fail to file a timely amended complaint, leave to amend shall be considered revoked, and Etchegaray will file an answer within twenty-one (21) days of service of this order.

IT IS SO ORDERED.

Dated:  June 19, 2018  
_____  
SENIOR DISTRICT JUDGE

---

[8] No other substantive amendments are permitted.